**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**RICKEY BROWN** **PLAINTIFF**
**Reg #27002-510**

**v.** **Case No. 3:23-cv-00036-KGB**

**TAYLOR INGLEHART, Deputy, Craighead,**
**County Sheriff's Department** **DEFENDANT**

**OPINION AND ORDER**

Before the Court is the motion for summary judgment filed by defendant Taylor Iglehart,[1] Deputy, Craighead County Sheriff's Department (Dkt. No. 40). Plaintiff Rickey Brown has not responded to the motion for summary judgment, and the time for doing so has passed. For the following reasons, the Court grants Iglehart's motion for summary judgment (*Id.*).

## I. Claims Alleged

Brown filed his complaint in this case on February 6, 2023 (Dkt. No. 2) and an amended complaint on April 6, 2023 (Dkt. No. 5), alleging claims against defendant Iglehart under 42 U.S.C. § 1983 for events that occurred on April 6, 2021, and August 20, 2021.[2] The Court determined that Brown's allegations failed to state a claim on which relief may be granted (Dkt. No. 15). The Court offered Brown the opportunity to file a second amended complaint to cure the defects in his pleading (Dkt. Nos. 15; 18). Brown filed a second amended complaint (the "Operative Complaint") (Dkt. No. 19). The Court screened the Operative Complaint and determined that

[1] The Court observes that an answer was filed on behalf of separate defendant Deputy Taylor Ingelhart (Dkt. No. 29). However, the affidavit submitted in support of his motion for summary judgment indicates that he is properly identified as Taylor Iglehart (Dkt. No. 42-1). The Court directs the Clerk to change the name of defendant to Iglehart, and the Court refers to Iglehart throughout this Opinion and Order, consistent with his affidavit.

[2] The Court dismissed claims against separate defendant Deputy Cody Laddner for lack of service on Laddner in an Order dated May 28, 2025 (Dkt. No. 31).

Brown could pursue his unlawful arrest, unlawful search, and excessive force claims against Iglehart in his personal capacity (Dkt. No. 20-1, at 9). Brown's claims stem from events that occurred on January 6, 2021, April 6, 2021, and August 20, 2021.

Iglehart files his motion for summary judgment asserting that he is entitled to qualified immunity on all of Brown's claims against him (Dkt. No. 41, at 4–9).

## II. Factual Background

In compliance with Rule 56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas, Iglehart filed a statement of indisputable material facts in support of motion for summary judgment (hereinafter "Statement of Facts") (Dkt. No. 42). Brown has not responded to Iglehart's Statement of Facts, and the time for doing so has passed. Local Rule 56.1 provides that "[a]ll material facts set forth in the statement filed by the moving party pursuant to paragraph (a) *shall* be deemed admitted unless controverted by the statement filed by the nonmoving party under paragraph (b)." Rule 56.1(c) of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas (emphasis added). Accordingly, pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas, the Court deems the following facts admitted.

Iglehart was a Deputy Sheriff with the Craighead County Sheriff's Department in 2021. He is currently Lieutenant in the patrol division (Dkt. No. 42, ¶ 1).

On April 16, 2021, at approximately 3:15 p.m., a search warrant was executed at 9565 Highway 49 B in Brookland on the house and for Brown (*Id.*, ¶ 2). Iglehart was advised that Brown had violated a no contact order and was asked to go to his residence to attempt to locate Brown and place him under arrest (*Id.*). When Iglehart arrived, Brown would not come to the door and would not respond to verbal commands given from outside (*Id.*, ¶ 3). While attempting to

make contact with Brown, a strong odor of marijuana was coming from the house (*Id*.). While attempting to make contact with Brown, Iglehart was advised that a search warrant was signed by a judge for the search of the residence and for the search of Brown himself (*Id*., ¶ 4).

Entry was then made into the home through an unlocked door on the side of the home (*Id*.). The home was then cleared up to a bathroom where the door was shut (*Id*., ¶ 5). The door was then opened where Iglehart observed Brown sitting on the edge of the bathtub (*Id*.). Iglehart then gave verbal commands for him to show me his hands (*Id*.). Iglehart gave this command multiple times before Brown complied with it (*Id*., ¶ 6).

Once he did, Iglehart told him to stand up and face away from me (*Id*.). Again, after giving this command multiple times he complied and stood up (*Id*.). He did not turn around and face away from me though (*Id*.). Instead he squared off to me and took an aggressive stance with his fist clinched as if he was preparing to fight (*Id*.). Iglehart then holstered his duty weapon and walked towards Brown where Iglehart took hold of his arm and attempted to place his hands behind his back (*Id*., ¶ 7). Brown then tensed up on me and attempted to spin around on me in what Iglehart believed to be an attempt to fight (*Id*.). Iglehart then placed Brown on the floor with the least amount of force necessary (*Id*., ¶ 8). During this take down, Brown received a small cut to the forehead (*Id*.).

Once on the ground, Brown continued to resist and would not place his hands behind his back (*Id*.). After a few moments of resistance Deputies were able to place Brown's hands behind his back and apply wrist restraints (*Id*., ¶ 9). Brown was escorted outside and placed in a patrol vehicle (*Id*.). Iglehart then assisted with clearing the remainder of the home where one more

subject was located in a bed inside of the bedroom (*Id*). After concluding the search Brown was placed under arrest and transported by Deputy Laddner[3] to the jail (*Id*., ¶ 10).

Iglehart does not recall any involvement with Brown on January 6, 2021 (*Id*., ¶ 11). Review of call records and arrest and booking documents from Brown indicate this was a Brookland Police Department arrest (Iglehart is not listed as present on that call) (*Id*).

Iglehart does not recall any involvement with Brown (or his relatives or acquaintances) on August 20, 2021, and the Sheriff's Department does not appear to have any call records or arrest records for Brown on that date (*Id*., ¶ 12).

Brown testified in his deposition with respect to the events on January 6, 2021, that "I -- honestly, I couldn't tell you exactly now. There - there were so many. I don't remember exactly which one this was"; "I know that I was arrested without a warrant a couple of times. I'm not sure about the exact dates, no."; "No, exactly. I don't know exact -- there was -- like I said, there were so many. I can't recall exactly what happened on what dates, but I do know what happened." (*Id*., ¶ 13 (citing Dkt. No. 42-3, at 9–11)).

Regarding the April 16, 2021, incident, Brown testified in his deposition, "[t]hey did have a warrant that day." (*Id*., ¶ 14 (citing Dkt. No. 42-3, at 14)). Brown testified in his deposition, "[o]h, no, I wasn't going to -- I wasn't going to be -- I wasn't being cooperative, I don't think, because I didn't know why they were coming in my house to begin with. But I wasn't -- I wasn't fighting them. I did try to yank my arm out of his hand when he [Iglehart] grabbed ahold of my arm." (*Id*., ¶ 15 (citing Dkt. No. 42-3, at 16)). Brown testified in his deposition, "[y]eah, they told

[3] On the Court's docket and in Iglehart's brief in support of motion for summary judgment, Deputy Laddner's name is spelled as it is in this Opinion and Order. Despite a different spelling of Laddner's name in other documents attached to Iglehart's Statement of Facts, the Court will continue to use the spelling of Laddner's name set out on the Court's docket and in Iglehart's brief.

me to stand up, and when I stood up, they told me to turn around. When I did, Ingelhart reached out and grabbed ahold of my arm, and I tried to yank my arm away from him, and they kicked – that's when they kicked my feet out from under me and just piled on me." (*Id.*, ¶ 16 (citing Dkt. No. 42-3, at 18)). Brown testified in his deposition, "I seen one of them double his fist up and punch me right in the forehead. . . I'm not even sure who it was, but . . . that wasn't [Iglehart]-- the one that punched me in the forehead, no, it wasn't . . . but I'm pretty sure he is the one that had his knee on my groin." (*Id.*, ¶ 17 (citing Dkt. No. 42-3, at 21)).

Brown testified in his deposition that he was using meth that day, was high, and that may have hindered his judgment (*Id.*, ¶ 18, (citing Dkt. No. 42-3, at 41)). Brown testified in his deposition that no medical professional ever said his hernia is the result of an injury. . . and "that's the first time he kind of remembers it, after that arrest." (*Id.*, at ¶ 19 (citing 42-3, at 52)).

Regarding the August 20, 2021, claim, Brown testified in his deposition that "[w]ell, I really don't know a whole lot about that one, because I wasn't there." (*Id.*, ¶ 20 (citing 42-3, at 31)).

## III. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if there is no genuine issue of material fact for trial. *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56). Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the movant is entitled to entry of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The party requesting summary judgment is 'entitled to judgment as a matter of law,' Fed. R. Civ. P. 56(c), if the non-movant fails 'to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Vaughn v. Wallace*, 496 F.3d 908, 910–11 (8th Cir. 2007) (quoting *Sallis v. Univ. of Minn.*, 408 F.3d 470, 474 (8th Cir. 2005)).

"In ruling on a motion for summary judgment, '[t]he district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'" *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923–24 (8th Cir. 2004) (internal citations omitted). "'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable juror to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

Parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

### B. Qualified Immunity

Individuals sued under 42 U.S.C. § 1983 in their individual capacities can raise qualified immunity as a defense. This doctrine "shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Partlow v. Stadler*, 774 F.3d 497, 501 (8th Cir. 2014).

"At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Stark v. Lee Cnty.*, 993 F.3d 622, 625 (8th Cir. 2021) (citations omitted). "When reviewing a law enforcement officer's entitlement to qualified immunity at summary judgment, a district court 'must take a careful look at the record, determine which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party as long as those facts are not so "blatantly contradicted by the record. . . that no reasonable jury could believe [them]."'" *Watson v Boyd*, 2 F.4th 1106, 1110 (8th Cir. 2021) (alterations in original) (citation omitted). "Then the court should determine if those facts demonstrate a constitutional violation that is clearly established." *Handt v. Lynch*, 681 F.3d 939, 945 (8th Cir. 2012).

> Government officials enjoy qualified immunity from suit under § 1983 unless their conduct violates clearly established law. A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. A right is not clearly established if existing precedent does not place the constitutional question beyond debate. To find that a right is clearly established, courts generally need to identify a case where an officer acting under similar circumstances was held to have violated the Constitution. The relevant precedent must define the right with a high degree of specificity, so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Principles stated generally, such as that an officer may not

> use unreasonable and excessive force, do not suffice. In short, officers receive qualified immunity unless they could have read the relevant precedent beforehand and known that it proscribed their specific conduct.

*Zorn v. Linton*, 607 U.S. 568, 571–72 (2026) (per curiam) (quotations and citations omitted).

## IV. Analysis Of Claims

### A. Excessive Force Claim

Brown claims that Iglehart used excessive force when Iglehart went to Brown's house to arrest him for violating a no contact order on April 6, 2021.

The objective reasonableness of an officer's actions must be assessed with careful attention to particular circumstances of the case, balancing the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake and as judged from the perspective of a reasonable officer on the scene. *Chambers v. Pennycook*, 641 F.3d 898, 905–06 (8th Cir. 2011) (internal citations omitted). These include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Shelton v. Stevens*, 964 F.3d 747, 752 (8th Cir. 2020).

Officers may use force to subdue an arrestee who refuses to comply with orders. *Ehlers v. Rapid City*, 846 F.3d 1002, 1011–12 (8th Cir. 2017). Even if a suspect does not intend to be threatening, a suspect's [innocent] motive . . . [is irrelevant if an officer] on the scene reasonably could have interpreted [the suspect]'s actions as resistance and, responded with an amount of force that was reasonable to effect the arrest." *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012).

The degree of a plaintiff's injury may be relevant "insofar as it tends to show the amount and type of force used." *Chambers,* 641 F.3d at 906. However, this Court bears in mind that police officers are required to make "split-second judgments" regarding what force to use in "tense,

uncertain, and rapidly evolving" circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Eighth Circuit has held that "[p]olice officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure, and reasonable applications of force may well cause pain or minor injuries with some frequency." *Chambers*, 641 F.3d at 907 (internal citation omitted).

Here, Iglehart seeks qualified immunity on Brown's claim brought against him in his individual capacity. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Even where an officer's action is deemed unreasonable under the Fourth Amendment, he is entitled to qualified immunity if a reasonable officer could have believed, mistakenly, that the use of force was permissible—in other words, if the officer was "reasonably unreasonable." *Anderson v. Creighton*, 483 U.S. 635, 643 (1987). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (internal quotation marks omitted). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate." *City of Escondido v. Emmons*, 586 U.S. 38, 43–44 (2019) (per curiam) (internal quotation and brackets omitted); *see also Shelton*, 964 F.3d at 753.

The Court determines that, based on the undisputed record evidence before the Court, no reasonable finder of fact could conclude that Iglehart used excessive force under the circumstances.

Before the search warrant was signed, Iglehart was advised that Brown had violated a no contact order, and Iglehart was asked to go to Brown's residence to attempt to locate Brown and

place him under arrest (Dkt. No. 42-1, ¶ 2). When Iglehart arrived, Brown would not come to the door and would not respond to verbal commands (*Id.*, ¶ 3). While attempting to make contact with Brown, a strong odor of marijuana was coming from the house (*Id.*). While attempting to make contact with Brown, Iglehart was advised that a search warrant was signed by a judge authorizing a search of the residence and a search of Brown (*Id.*, ¶ 4). Officers entered Brown's home through an unlocked door on the side of the home (*Id.*). The home was then cleared up to a bathroom, and the door to the bathroom was shut (*Id.*, ¶ 5).

Officers opened the door, and Iglehart observed Brown sitting on the edge of the bathtub (*Id.*). Iglehart gave Brown verbal commands for Brown to show his hands (*Id.*). Iglehart gave this command multiple times before Brown complied and showed his hands (*Id.*, ¶ 6). Once Brown complied, Iglehart told Brown to stand up and face away from him (*Id.*). Again, after giving this command multiple times, Brown complied and stood up, but Brown did not turn around and face away from Iglehart (*Id.*).

Instead, Brown squared off to Iglehart and took what Iglehart believed to be an aggressive stance with his fist clinched as if he was preparing to fight (*Id.*). Iglehart then holstered his duty weapon and walked towards Brown where Iglehart took hold of Brown's arm and attempted to place Brown's hands behind his back (*Id.*, ¶ 7). Brown then tensed up and attempted to spin around in what Iglehart believed to be an attempt to fight (*Id.*). Iglehart then placed Brown on the floor with the least amount of force necessary (*Id.*, ¶ 8). During the take down, Brown received a small cut to the forehead (*Id.*).

Once on the ground, Brown continued to resist and would not place his hands behind his back (*Id.*). After a few moments of resistance, Deputies were able to place Brown's hands behind his back and apply wrist restraints (*Id.*, ¶ 9). Brown was escorted outside and placed in a patrol

vehicle (*Id.*). Iglehart assisted with clearing the remainder of the home, where one more subject was located in a bed inside of the bedroom (*Id.*, ¶ 9). Brown was placed under arrest and Deputy Cody Laddner transported Brown to the jail (*Id.*, ¶ 10).

Brown testified at his deposition that Iglehart had a warrant that day and that he was not being cooperative (Dkt. No. 42-3, at 14, 16). Brown acknowledged at his deposition that he was using methamphetamine that day, was high, and that may have hindered his judgment (*Id.*, at 41). Brown admitted that he tried to yank his arm out of Iglehart's hand when Iglehart "grabbed ahold of my arm which resulted in them kicking his feet out from under him and just piling on him." (*Id.*, at 15–16). Brown testified that he jerked away because he "didn't want [Iglehart] grabbing me. I didn't want his hands on me." (Dkt. No. 42-3, at 19). Brown stated, "that's when they kicked my feet out from under me and just piled on me." (*Id.*, at 18).

Further, Brown testified that someone other than Iglehart punched him during the incident and that he is "pretty sure" Iglehart is the one that had his knee on his groin (*Id.*, at 21). Finally, Brown testified in his deposition that no medical professional ever said that Brown's hernia is the result of an injury, and "that's the first time he kind of remembers it, after that arrest." (Dkt. No. 42-3, at 52).

Viewing the facts in the light most favorable to Brown, Brown was resisting Iglehart as he attempted to place Brown in restraints. This resulted in Iglehart taking Brown to the ground. While Brown received a cut over his eye and a fractured jaw as a result of the incident, Brown admits that Iglehart was not the one who punched him. Brown asserts that Iglehart put a knee to Brown's groin during the incident and that Brown later "ended up with a hernia," but Brown testified at his deposition that no medical professional ever said that Brown's hernia is the result of an injury (Dkt. No. 42-3, at 52). The Court determines that, based on the undisputed record

evidence before the Court, no reasonable finder of fact could conclude that Iglehart used excessive force under the circumstances.

As set forth above, police may use some force to effect an arrest on a suspect who ignores police orders. *See, e.g., Ehlers*, 846 F.3d at 1011. Refusing police orders can qualify as passive resistance. *See Id.*, 846 F.3d at 1011–12. "When a suspect is passively resistant, somewhat more force may reasonably be required." *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020) (quoting *Wertish v. Krueger*, 433 F.3d 1062, 1066–67 (8th Cir. 2006)). "[Q]ualified immunity [also] protects law enforcement from liability where the suspect was non-compliant and resisted arrest or ignored commands from law enforcement." *Jackson v. Stair*, 944 F.3d 704, 711 (8th Cir. 2019) (internal citations omitted).

When determining how much force to use in response to a resisting suspect, "state actors are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Boudoin v. Harsson*, 962 F.3d 1034, 1040 (8th Cir. 2020). Brown has not shown that it was clearly established that Iglehart's use of force in this context would constitute an unreasonable seizure within the meaning of the Fourth Amendment. Iglehart is entitled to qualified immunity on Brown's Fourth Amendment excessive force claims against him in his individual capacity.

In the alternative, Brown has also not shown that Iglehart caused him injury. Brown asserts that Iglehart put his knee to his groin. According to Brown, he later had a hernia. Brown testified at his deposition that, shortly after the April 6, 2021, incident he noticed "a lump" right above his groin (Dkt. No. 42-3, at 49-50). Brown testified at his deposition that no medical professional ever said his hernia is the result of an injury (*Id.*, at 52), and his hernia has been treated while Brown has been in federal custody (*Id.*, at 49–52). Accordingly, there is no medical testimony to support the assertion that Iglehart's action during the April 2021 incident caused Brown's hernia.

Iglehart is entitled to qualified immunity on Brown's Fourth Amendment excessive force claims against him in his individual capacity.

### B. Remaining Claims

Brown also claims that he was unlawfully arrested by Iglehart on January 6, 2021, and April 6, 2021, and unlawfully searched by Iglehart on August 20, 2021, pursuant to 42 U.S.C. § 1983. Iglehart asserts that he is entitled to qualified immunity on both the unlawful arrest and unlawful search claims (Dkt. No. 41, at 7–9 (citing *Parsons v. McCann*, 138 F. Supp. 3d 1086, 1106 (D. Neb. 2015)).

#### 1. Unlawful Arrest

Turning first to Brown's unlawful arrest claims, "[i]t is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (quoting *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010)). "To survive summary judgment on his unlawful-arrest claim, . . . [a plaintiff] must demonstrate both that he was arrested without probable cause and that this violation was clearly established." *Setchfield v. St. Charles Cnty.*, 109 F.4th 1084, 1093 (8th Cir. 2024) (citing *District of Columbia v. Wesby*, 583 U.S. 48, 65 (2018)).

An arrest warrant is generally fatal to an unlawful arrest claim. *See Majors v. City of West Des Moines*, 179 F.4th 651, 653 (8th Cir. 2026) (determining valid arrest warrant was fatal to Majors's unlawful arrest claim); *Stigall v. Madden*, 26 F.3d 867, 869 (8th Cir. 1994) (arrest warrant generally shields officer from liability for an unlawful arrest under the Fourth Amendment).

Here, Iglehart was a Deputy Sheriff with the Craighead County Sheriff's Department in 2021 (Dkt. No. 42-1, ¶ 1). On April 16, 2021, Iglehart was advised that Brown had violated a no contact order, and Iglehart was asked to go to Brown's residence to attempt to locate Brown and

place him under arrest (*Id.*, ¶ 2). According to records, an arrest warrant issued on April 12, 2021, related to the no contact order against Brown. *See* Arkansas Judiciary Website, Docket Search, http://caseinfo.arcourts.gov; *State v. Brown*, Case No. JOC-21-2556, Craighead County District Court, 19th Division, Arrest Warrant Issued (April 12, 2021); Arrest Warrant Served (April 16, 2021). The Affidavit for Search Warrant completed by David Boling on April 16, 2021, which resulted in a warrant to search Brown's home indicates that, in addition to the arrest warrant related to the no contact order, Brown also had outstanding misdemeanor warrants for assault second degree and criminal mischief first degree on April 16, 2021 (Dkt. No. 42-2, at 4). When Iglehart arrested Brown on April 16, 2021, Iglehart was acting pursuant to one or more arrest warrants (Dkt. No. 42-2, ¶ 2, at 3–9). *Id.* Accordingly, Iglehart's arrest of Brown did not violate the Fourth Amendment. *See Majors*, 179 F.4th at 653.

According to Iglehart's uncontradicted affidavit, he does not recall any involvement with Brown on January 6, 2021. At his deposition, Brown could not remember specifics about events that occurred on January 6, 2021, but Brown agreed that court records would bear out whether there was a warrant or not (Dkt. No. 42-3, at 8-10). Review of the call, arrest, and booking documents from Brown's involvement with law enforcement on January 6, 2021, indicate that the Brookland Police Department, not Iglehart, was involved with Brown on January 6, 2021 (Dkt. Nos. 42-1, ¶ 11; 42-2, at 17–19). Iglehart is not listed as present on the call on January 6, 2021 (Dkt. Nos. 42-1, ¶ 11; 42-2, at 17–19).

The record evidence does not support Brown's claims of unlawful arrest as to Iglehart on January 6, 2021, or April 16, 2021. Accordingly, Iglehart is entitled to qualified immunity on Brown's Fourth Amendment unlawful arrest claims under 42 U.S.C. § 1983 related to events that occurred on January 6, 2021, and April 16, 2021.

**2. Unlawful Search**

In the Operative Complaint, Brown claims that Iglehart unlawfully searched his house on August 20, 2021. At his deposition, Brown testified that he did not know "a whole lot" about what occurred on August 20, 2021, "because I wasn't there." (Dkt. No. 42-3, at 31). Brown stated he was told by his brother and two neighbors that they were handcuffed while officers searched Brown's house (Dkt. No. 42-3, at 31). At his deposition, Brown did not identify who conducted what he supposed was a warrantless search (Dkt. No. 42-3, at 31–32). Iglehart does not recall any involvement with Brown or his relatives or acquaintances on August 20, 2021, and the Sheriff's Office does not have any call records or arrest records for Brown on that date (Dkt. No. 42-1, ¶ 12; 42-2).

To state a Fourth Amendment claim for an unconstitutional search under § 1983, a plaintiff must allege: (1) an unlawful search; and (2) an "actual, compensable injury." *Waters v. Madson*, 921 F.3d 725, 740 (8th Cir. 2019). The damages alleged must stem specifically from the unlawful search, rather than any attendant Fourth Amendment seizure or other constitutional violation and must be beyond the mere indignity of the search itself. *See id.* at 741.

To the extent that Brown tries to make a claim for an unconstitutional search on January 6, 2021, the claim fails based on the record evidence. On the record evidence before the Court, there are no facts from which a reasonable jury could find that Iglehart performed an unconstitutional search of Brown's home that violated the Fourth Amendment under § 1983 on January 6, 2021, or that Brown was injured from such a search.

To the extent that Brown is attempting to allege that Iglehart's search of his house on April 16, 2021, was illegal, that claim also fails because, on the record evidence, Iglehart was acting pursuant to a signed search warrant on April 16, 2021 (Dkt. No. 42-2, at 4–10). On the record

evidence before the Court, there are no material facts from which a reasonable jury could find that Iglehart's search of Brown's home on April 16, 2021, violated the Fourth Amendment as an unconstitutional search under § 1983.

**V. Conclusion**

For the foregoing reasons, the Court grants separate defendant Iglehart's motion for summary judgment (Dkt. No. 40) and dismisses with prejudice all of Brown's remaining claims in Brown's Operative Complaint (Dkt. No. 19). Brown's request for relief is denied.

It is so ordered this 28th day of September, 2026.

Kristine G. Baker
Kristine G. Baker
Chief United States District Judge